JOHN I. THROCKMORTON vs. GEORGE D. CHAPMAN ET UX.

Third Judicial District, Bridgeport, October Term, 1894. ANDREWS, C. J.,
TORRANCE, FENN, HAMERSLEY and THAYER, Js.

The community of interest between husband and wife is such, the tempta-
tions are so great, and the opportunities afforded to financially embar-
rassed husbands for withdrawing and concealing their property from
creditors, and preserving it in their own hands, are so convenient, that
any transfer of property between them, when challenged for fraud,
should be subjected to a rigorous scrutiny.
It is not essential, as matter of law, that in the case of a purchase of prop-

erty alleged to be in fraud of the husband's creditors, the wife should show by clear and satisfactory evidence that the consideration paid by her was her *sole and separate* estate. It is sufficient if, upon the whole case, the wife shows by the evidence, to the satisfaction of the trier, that as between herself and her husband the consideration paid was her own money instead of his.

If the land sought to be subjected to the husband's debts actually belonged to the wife, in whose name it stood of record, the mere fact that the husband joined the wife in a note and mortgage given for a loan, the proceeds of which were paid over to the vendor of the land as the purchase price, does not, as matter of law, make the money paid either in whole or in part the money of the husband.

In the present case this court, upon the facts stated in the record, reached the conclusion that the trial court intended to decide, and did decide, that the legal and equitable title to the real estate was in the wife before the loan was obtained, subject only to the payment of the purchase price.

If there be no error apparent on the record, this court will affirm the judgment though it is difficult to see from the record how the trial court came to the conclusions of fact which it reached.

The unexplained absence of husband or wife from court and their omission to testify, in an action to impeach a conveyance to her as in fraud of his creditors, would create an unfavorable presumption against them.

[Argued October 24th, 1894—decided January 18th, 1895.]

ACTION to foreclose a judgment lien, brought to the Superior Court in Fairfield County and tried to the court, *Shumway, J.;* facts found and judgment rendered for the defendant, Lucia I. Chapman, and appeal by the plaintiff for alleged errors in the rulings of the court. The appellant also excepted to certain findings of fact and refusal to find facts. *No error.*

The material facts found by the trial court are as follows:

A judgment for $11,641.09 against George D. Chapman in favor of the plaintiff, was rendered by the Superior Court for Fairfield County, at its session in Bridgeport, on the first Tuesday of March, 1891; execution thereon was returned unsatisfied, and a certificate of a judgment lien upon the lands described in the amended complaint was filed and recorded in the land records of the town of Fairfield. An attachment in the action in which such judgment was obtained was placed on the interest of George D. Chapman in said lands. The judgment above referred to was founded on a judgment

of August 24th, 1888, of the Supreme Court of the State of
New York, which judgment was founded on a judgment of
May 20th, 1884, of the Court of Common Pleas for Franklin
County, Ohio, in an action brought for services alleged to
have been rendered in the year 1875, in securing subscrip-
tions to stock in a railroad company in Ohio, called The Scioto
Valley Railway Company. George D. Chapman and Lucia
I. Chapman are husband and wife, married in 1862. The par-
cels of land therein alluded to were purchased as alleged in
paragraph 7 of the amended complaint. The first parcel is
the homestead of Mrs. Chapman. For many years prior to
1875, the land with an old house that stood upon it, was
owned by one Mrs. Susan Sturges, an aunt of George D.
Chapman, with whom Mr. and Mrs. Chapman and their fam-
ily were at that time living. The land and buildings before
improvements were made upon them were worth from $5,000
to $6,000. In 1868 or 1869, Mr. Chapman, at the direction
and request of, and acting for Mrs. Sturges and with her
money and assets, erected a new house and barn, and made
other improvements upon this property, which improvements
were not fully paid for. In the year 1872, English & Holt,
a firm of builders in New Haven, brought proceedings in the
Superior Court for Fairfield County, and foreclosed a lien on
the aforesaid premises, for materials furnished in the erection
and construction of the buildings thereon erected as aforesaid,
and the title to said property became absolute in said Eng-
lish & Holt about the first Monday in April, 1873. On Jan-
uary 31st, 1876, English & Holt, in a letter of that date to
Mrs. Chapman, threatened to eject her and Mrs. Sturges from
the aforesaid premises, which they had continued to occupy
since said foreclosure proceedings, unless the rent were
promptly paid; but offered to sell the property to her on or
before the first of the following July at a low price. In the
same letter they said that they would hold the property no
longer than the next first of July. The outcome of that let-
ter was negotiation through Mr. Samuel Glover, a real estate
agent, which resulted in an agreement on the part of English
& Holt to sell the property to Mrs. Chapman for $5,000.

After some delay, caused by the necessity of foreclosing certain persons claiming rights and liens in and on said premises who were not made parties to the original foreclosure, a loan of $5,000 was obtained on said property from the Bridgeport Savings Bank. Mr. Chapman, acting again for Mrs. Sturges, a short time prior to April 1st, 1877, employed Anderson & Pennoyer, carpenters, to do some work about said premises. Toward this bill Mr. Chapman, with money of Mrs. Sturges, paid Anderson & Pennoyer $250, and for the balance they placed a mechanics' lien on the premises. This lien English & Holt purchased. Afterwards, by deed dated May 8th, 1877, English & Holt conveyed the premises to Mrs. Chapman. By deed dated May 10th, 1877, the premises were mortgaged to the Bridgeport Savings Bank, which deed was executed by Mrs. Chapman. In its execution she was joined by her husband, George D. Chapman, and it was given to secure a note for $5,000, signed by Mrs. Chapman, and in the signing of the note she was joined by her husband. On May 18th, 1877, William K. Seeley, as attorney for Mrs. Chapman and her husband, received from said Savings Bank a cheque for $4,943.75, which amount with money of his own to make the sum of $5,000, he paid to English & Holt as purchase money for said premises. The money so advanced by Mr. Seeley, as well as other moneys advanced by him for other purposes and his fees, were repaid to him by Mrs. Chapman. The interest on the note to the bank has been paid by Mrs. Chapman. In some few instances, Mr. Chapman sent to the bank the money for this purpose, for Mrs. Chapman or Mrs. Sturges, and using for the purpose funds of theirs in his hands at that time. Mrs. Sturges was possessed of personal property and estate other than the land referred to, and Mr. Chapman acted for her and advised with her in the management of most of her property interests.

Mrs. Chapman, by her deed of May 10th, 1877, in the execution of which she was joined by her husband, conveyed the aforesaid premises to Mrs. Susan Sturges, for the term of her life. In the deed making this conveyance, the said Chapman and wife appear as releasors. Mrs. Sturges died and her life

estate in the premises terminated February 23d, 1890.   By
deed dated November 29th, 1876, one Charles Smith con-
veyed to Mrs. Chapman the premises described in the amended
complaint as seventh piece.   Mrs. Chapman and Mrs. Sturges
arranged the purchase of this tract, and it was paid for with
the money of one or both of them.   From time to time alter-
ations and improvements have been made upon the premises
described as the first piece.   In 1888, one McCarty did cer-
tain mason work there.   In these alterations and improve-
ments Mr. Chapman frequently acted for Mrs. Chapman in
overseeing the work, and it was directed both by Mrs. Chap-
man and by Mr. Chapman for Mrs. Chapman.   One Ander-
son, a carpenter, also did some work on the said first piece.
For this work he was paid mostly in cheques of Mrs. Chap-
man.   But in some instances, one or two, he received Mr.
Chapman's cheques.   In the instances of his receiving cheques
of Mr. Chapman, it appears that Mr. Chapman made the dis-
bursement for Mrs. Chapman and on her account, and that
he never expended or put any of his own means into the im-
provements, additions or alterations made in the premises.

In 1890, Mrs. Chapman employed Warren R. Briggs, an
architect, to prepare plans and superintend alterations and
enlargements in the house on said first piece.   Said Briggs
prepared the plans and consulted and advised with Mrs. Chap-
man in relation to them both in her hotel in New York and
at her house in Fairfield.   He also, as did Mrs. Chapman,
consulted and advised with Mr. Chapman relative to the
same.   Contracts for the work as per plans submitted by
him, were made by the architect with various workmen, Ruth-
erford, Jessup, Eames and Coughlin Bros.   These contracts
were all made, as was that with the architect, in Mrs. Chap-
man's name, and for her by her agent, Mr. Briggs, the architect.
Payments due on the same were made by Mrs. Chapman.
The money used in these payments was that of Mrs. Chap-
man and her two sons, Lucian T. and Ellsworth I. Chapman,
with whom she had a business arrangement in regard to the
improvement of that, and the purchase and improvement
of other property hereinafter mentioned.   The sons, one of

whom was married, made considerable money in business and stock operations in New York prior to 1890. They spent their summers at the homestead in Fairfield, which they looked upon as their own, with their mother. They also arranged to purchase with their mother a tract of land on a neighboring hill-site, known as Mill-Hill, improve it, and sell it off in building lots. A part of this was purchased and the title taken in the name of their mother. It was their intention when the purchase of all that was desired was completed, to form a stock company for the ownership of the land, in which company they and their mother were to have stock, and others were to be interested in it; but the attachments in the suits hereinbefore set out prevented their plans from being carried out. George D. Chapman had no part or financial interest in any of these transactions.

The second, third, fourth, fifth, sixth, eighth and ninth pieces described in the third paragraph of the amended complaint, were conveyed to Mrs. Chapman, as is in said third and seventh paragraphs of said amended complaint alleged. The said parcels were purchased in the name of Mrs. Chapman, with money of herself and her sons, in pursuance of the foregoing arrangement.

Mrs. Chapman is not a robust woman and has not been in vigorous health since the birth of her youngest child in 1870. She has, however, given a general attention to her property interests and business operations in connection therewith, and in which she was latterly interested with two of her sons. Mr. Chapman has from time to time, as is stated above, acted in her behalf in matters in which she has been interested and in the oversight of her property.

None of the property described in the plaintiff's complaint was purchased with the money or upon the credit of the defendant, George D. Chapman, except that in the purchase of the homestead he signed the note to the Bridgeport Savings Bank, with his wife, for a loan of $5,000, which loan was secured by a mortgage of said property, and the money raised by said mortgage loan was paid to English & Holt as part of the purchase price of said property. And the other

tracts of land described in the complaint were purchased in the manner above stated by Mrs. Chapman for herself or for Mrs. Sturges, or her sons; and the improvements made upon the same were made in the same manner.

In the 8th paragraph of his complaint, the plaintiff alleged that the several parcels of land referred to, together with the buildings, fixtures and improvements thereon, belonged, in equity, to the defendant, George D. Chapman; that they were bought with his money or credit while he was largely indebted to the plaintiff and others and was insolvent, and that the defendants fraudulently conspired and combined to cheat and defraud the plaintiff and other creditors by causing the apparent title to said parcels of land to be taken and retained in the name of his wife; and that thereby the plaintiff had been hindered, delayed and defrauded of his right to enforce payment of his just claim out of the property of the said George D. Chapman.

The trial court found these allegations to be untrue.

*Goodwin Stoddard* and *John L. Morehouse,* for the appellant (plaintiff).

I. The court erred in not applying, in determining the facts, the rule of law claimed by the plaintiff, as to the burden of proof, *viz:* That if Mrs. Chapman would prevail, as against the plaintiff, the burden of proof was upon her to show by clear and satisfactory evidence that the consideration paid for said property arose from some other source than her husband, and consisted of her separate estate. *Seitz* v. *Mitchell,* 94 U. S., 580; *Brooks, Rogers & Co.* v. *Appelgate & Walters,* 37 W. Va., 376; *Herzog* v. *Werler,* 24 id., 199; *Adams* v. *Bleakley,* 117 Pa. St., 283; *Gambler* v. *Gambler,* 18 id., 364; *Keeney* v. *Good,* 21 id. 354; *Hinkley et al.* v. *Wilson,* 53 Md., 287; *Bessen* v. *Eveland,* 26 N. J. Eq., 469; *Reeves* v. *Webster,* 71 Ill., 307; *Farrell* v. *Patterson,* 43 id., 59; *Patton* v. *Bragg,* 113 Mo., 595; *Sloan* v. *Torry et al.,* 78 id., 625; *Weil* v. *Simmons,* 66 id., 620; *Semmers* v. *Walters,* 55 Wis., 675; *Jones* v. *Brandt,* 59 Iowa, 339; *Davis* v. *Zimmerman,* 40 Mich., 24; *Meredith* v. *City Nat. Bk.,* 92 Ind.,

Throckmorton v. Chapman et ux.

343; *Wedgeworth* v. *Wedgeworth*, 84 Ala., 272; *Dresher* v. *Corson*, 23 Kan., 316; *Robbins* v. *Armstrong, Calor & Co.*, 84 Va., 810; *Alston* v. *Rowles*, 13 Fla., 117; *Clark* v. *Viles & Trustee*, 32 Me., 32; *Kimball* v. *Fenner*, 12 N. H., 248; *Lake* v. *Bender*, 18 Nev., 361; *Jones* v. *Epperson*, 69 Tex., 586; *Alverson* v. *Janes*, 10 Cal., 9; Wait on Fraud. Convey., § 308; 2 Bigelow on Fraud, 186; Tyler on Infancy and Coverture, 533.

It can be no hardship to require a wife to show a fact so peculiarly within her own knowledge, as is the source from which she derived property during the insolvency of her husband. *Burt* v. *Timmons*, 20 W. Va., 460; *Fisher* v. *Shelver*, 53 Wis., 501; *Dresher* v. *Croson*, 23 Kan., 316; *Reeves* v. *Webster*, 71 Ill., 307; *Commonwealth* v. *Williams*, 7 Gray, 337; *Donovan's Appeal from Probate*, 41 Conn., 556; *Jarvis* v. *Prentice*, 19 id., 282; *Jennings* v. *Davis*, 31 id., 138; *Hinman* v. *Parkis*, 33 id., 195; *Sherwood* v. *Sherwood*, 32 id., 12; Harris on Contracts of Married Women, § 5.

II. The court erred in overruling the claim of the plaintiff that the absence of Mrs. Chapman from the trial and her omission to testify was a ground for an unfavorable presumption against her. *Newman* v. *Cordell*, 43 Barb., 455, 456; *Isett & Brewster* v. *Lucas*, 17 Iowa, 502, 503; *Henderson et al.* v. *Henderson et al.*, 55 Mo., 559; *Cox* v. *Shropshire*, 25 Tex., 126, 127; *Peebles* v. *Horton*, 64 N. C., 375, 377; *Bowden* v. *Johnson*, 107 U. S., 262; *Fordyce* v. *McCants*, 55 Ark., 384.

III. The court erred in overruling the claim made by the plaintiff that the money loaned by said bank and used in the purchase of said homestead was the money of the husband, and that the wife in signing the note incurred no personal responsibility or liability of any kind, and that the bank as to her could look only to the land which was mortgaged to secure said note. *Brady* v. *Barnes*, 42 Conn., 512; *Aukeney* v. *Hannon*, 147 U. S., 126; 14 Amer. & Eng. Ency. of Law, p. 621, § 12; 2 Lawson on Rights & Remedies, § 747; Schouler Com. Rel. (4th Ed.), § 58; Harris on Contracts by Married Women, § 7; *Smith* v. *Williams*, 43 Conn.,

416; *Williams* v. *King*, 43 id., 571; *Cooke* v. *Newell*, 40 id., 596.

If she is liable upon this note it must be by virtue of the statute providing, that " Actions may be sustained against a married woman,—upon any contract made by her since marriage upon her personal credit, for the benefit of herself, her family, or her separate or joint estate." General Statutes, 1875, p. 417, § 9.

But a contract made upon the personal credit of the wife " is not enough to fix her liability. The contract must have been for the benefit of herself, her family or her estate." *National Bank of New England* v. *Smith*, 43 Conn., 331. To hold a married woman liable on such a contract would be to " effectually demolish every safeguard which the law has established and maintained for the protection of the property of married women." *Gore* v. *Carl*, 47 Conn., 292; *Sherwood* v. *Sherwood*, 32 id., 12.

The court erred in overruling the claim of the plaintiff that if Mrs. Chapman incurred a personal responsibility, in signing the note to the bank, she could by no means have acquired more than an equal interest in said money with her husband, and that to the extent his interest in said money contributed to the purchase of said homestead property, to that extent it is available to this plaintiff in satisfaction of his claims. *Monson* v. *Drakeley*, 40 Conn., 552; *Trumbull* v. *Hewitt*, 62 id., 452. Mr. Chapman owned at least an equal proportion of the money received from the bank by his attorney, Mr. Seeley. *Orvis* v. *Newell*, 17 Conn., 102; *Tisdale* v. *Maxwell*, 58 Ala. 40. To the extent Mr. Chapman's money or credit contributed to the consideration paid for this property, to that extent is it available to this plaintiff in satisfaction of his claims. *Burton* v. *Gibson*, 32 W. Va., 418; *Quidort's Adm'rs* v. *Pergeaux*, 18 N. J. Eq., 472; *Hinman* v. *Parkis*, 33 Conn., 200; *Shackleford, Assignee, etc.*, v. *Collier*, etc., 6 Bush, 149.

Mrs. Chapman having knowledge of her husband's financial condition is not in the position of an innocent party. *Redfield* v. *Buck*, 35 Conn., 338; *Zimmerman* v. *Heinrich*, 43

Iowa, 260; Wait on Fraud. Conv., § 379 (2d Ed.) The taking of a conveyance to a wife by a husband who had paid the consideration therefor is equivalent to a voluntary conveyance. *Whittlesey* v. *McMahon*, 10 Conn., 137; *Hitchcock* v. *Kieley*, 41 id., 611; *Trumbull* v. *Hewitt*, 62 id., 452.

*Daniel Davenport*, with whom was *Wm. B. Glover*, for the appellees (defendants).

I. The ownership of the money paid for the homestead was a question of fact, pure and simple, to be decided by the court from all the evidence. The fact that to secure the repayment of the money the husband joined with the wife in the execution of the note and mortgage, and that the savings bank check was made payable to their joint order and was indorsed by Mr. Seeley as attorney for both is by no means conclusive. He must join in the execution of the deed to make a valid mortgage. It is a frequent and indeed the usual occurrence, when money is loaned to a wife by a savings bank upon the security of a mortgage upon her real estate, to have the husband join with the wife in the note. In such a case he becomes a surety for her, and while he thereby becomes obligated to the bank, the money loaned does not become his as a matter of law or fact, but it is hers, because it is loaned to her. Whether the check is made payable to him alone or to both or to a third party, makes no difference so long as she gets the money and uses it for her own benefit. For which party in transactions of this kind such liability is incurred, is always a question of fact to be determined by the evidence and circumstances surrounding each particular case. *Donovan's Appeal*, 41 Conn., 551; *Langenback* v. *Schell*, 40 id., 224; *Conn. Hum. Soc. Appeal*, 61 id., 474.

II. The court committed no error in overruling the claim of the plaintiff that the burden was upon the wife to show by clear and satisfactory evidence that the consideration paid for said property arose from some other source than her husband, and consisted of her separate estate. *Vail* v. *Vail*, 49 Conn., 52; *Williams* v. *King*, 43 id., 537; *Cook* v. *Newell*, 40

id., 596; *Jackson* v. *Hubbard*, 36 id., 17; *Robinson* v. *Brems*, 90 Ill., 354.

We do not believe that any well considered case can be found, that requires her to show both that the consideration came from some other source than her husband, and that it consisted of her separate estate, by clear and satisfactory evidence. The consideration paid may be the property of third persons, and not her separate estate, and yet the land conveyed to her, be not liable to be taken for his debts. *Stall* v. *Fulton*, 30 N. J. L., 437; Horton v. Dewey, 53 Wis., 412; *Whiton* v. *Snyder*, 88 N. Y., 304; *Donovan's Appeal*, 41 Conn., 556.

III.  The action of the court upon the plaintiff's claim that the absence of Mrs. Chapman from the court room and her omission to testify was a ground for an unfavorable presumption against her which is the basis of the plaintiff's fourth reason of appeal, constitutes no error in law, of which this court can take cognizance.

So far as this claim may be regarded as an argument addressed to the lower court to find one fact from another fact, the action of that court upon it must be regarded as final. What inference, whether favorable or unfavorable to her, was to be drawn from her absence and omission to testify, was wholly within the province of the trial court. So far as the claim of the plaintiff may be regarded as one of law, that her absence and omission to testify was a ground for an unfavorable presumption of law against her ownership of the property, it is wholly without foundation. *Scovill* v. *Baldwin*, 27 Conn., 318; *Brooks* v. *Steen*, 6 Hun, 516; *Bleecker* v. *Johnston*, 69 N. Y., 311.

ANDREWS, C. J.  This was an action praying to foreclose a judgment lien on nine pieces of land situated in the town of Fairfield. The complaint alleged the obtaining by the plaintiff of a judgment against George D. Chapman; that a judgment lien was duly placed on these pieces of land; that the record title to each and all of them was in Lucia I. Chapman, wife of said George D.; that they were married

in 1862; that all said pieces of land had been purchased with the money, or upon the credit, of the said George D.; and that the title had been taken in the name of the said Lucia I., for the purpose of defrauding the plaintiff and others who were creditors of the said George D. Chapman.

The plaintiff made numerous requests to the court for rulings, all of which were denied. The finding of the material facts is set forth in the statement of the case. The court found the issues for the defendants and dismissed the complaint. The plaintiff appealed.

The only real controversy in the case in the trial court, was whether or not George D. Chapman had any interest in the parcels of land described, or in any of them, which could be taken for his debts. Most of the claims made by the plaintiff are disposed of by the finding of facts. Only three or four were pressed in this court. As to all the pieces of land mentioned in the complaint, other than the first one called the homestead, the finding is explicit that they were purchased with funds in which Mr. Chapman had no interest. As to the homestead, the plaintiff asked the court to hold and rule, " that the money loaned by the bank to Mr. and Mrs. Chapman and used by them in the purchase of the homestead, was the money of the husband, and that the wife in signing the note incurred no personal responsibility or liability of any kind, and that the bank, as to her, could only look to the land which was mortgaged to secure the note. That if she incurred a personal responsibility, she could by no means have acquired more than an equal interest in the money with her husband, and that to the extent of his interest in said money, contributed to the purchase of said homestead property, it is to that extent available to this plaintiff in satisfaction of his claims. That the fact the mere legal title never vested in the husband, could make no difference in this case, as the taking of a conveyance to a wife by a husband who had paid the consideration therefor, is equivalent to a voluntary conveyance." These claims were overruled.

The decisive question in this part of the case was not to

whom did the money obtained from the savings bank belong; but whose was the land mortgaged to the bank as security for that money. If the land so mortgaged belonged to Mrs. Chapman and not to Mr. Chapman, then, granting that the money was the money of Mr. Chapman, there is no error.in this ruling. It is then an instance of the mortgage by a wife of her land to secure a loan of money to her husband.

In respect to this first piece of land several requests were made to the trial judge for the finding of particular facts. These are in the record, with the marginal statement to each of "proven" or "not proven." The finding of facts made by the court, read in connection with these requests, is perhaps, not entirely consistent or wholly free from doubt. From a careful and somewhat prolonged study of the case we are led to conclude that the trial court intended to decide, and did decide, that the title to the homestead was in Mrs. Chapman before the money was obtained from the savings bank, and that that money was not strictly purchase money, but was money raised by the mortgage to remove the lien of English & Holt. The legal title to the homestead was in Mrs. Chapman before the mortgage was made. The deed from English & Holt to Mrs. Chapman was made on the 8th day of May, 1877, while the money was not obtained from the bank until the 10th of that month. And the agreement between Mrs. Chapman, Mrs. Sturges, and Messrs. English & Holt, is sufficient to authorize the court to decide that the equitable title also had vested in her, subject, of course, to the payment of the debt to English & Holt. In this view of the case the court has not committed any error which has harmed the plaintiff; for, even though the money obtained from the bank technically belonged to Mr. Chapman and it was used to pay the debt of English & Holt, he had no interest in the homestead which could be taken by his creditors.

The plaintiff also claimed and asked the court to hold, "that the burden of proof was upon the wife to show by clear and satisfactory evidence that the consideration paid for the said property arose from some other source than her

husband, and consisted of her separate estate." We think this claim went too far and that the court committed no error in disregarding it. It is true that where any case like the present one is on trial, where a transaction in which a husband and wife are engaged, and in which it is claimed that the wife is colluding with her husband to conceal his property in her hands so as thereby to defraud his creditors, is the subject of inquiry, it should be examined with all reasonable diligence to discover if such fraud exists. The community of interest between husband and wife is such, the opportunities for frauds of this kind between them are so convenient, the temptations are so great, and the instances in which embarrassed husbands have resorted to this kind of proceeding for the purpose of withdrawing their property from the reach of their creditors and preserving it in their own hands are so frequent, that all such transactions should be subjected to a rigorous scrutiny. But if, upon the whole case, the wife shows by the evidence, to the satisfaction of the trier, that as between her husband and herself the consideration was her own money instead of his, we think she should have judgment in her favor. *Conn. Humane Soc. Appeal,* 61 Conn., 465; *Trumbull* v. *Hewitt,* 62 id., 448.

Another claim made by the plaintiff was, " that the absence of said husband and wife, and their omission to testify, was a ground for an unfavorable presumption against them." This claim is stated to have been overruled. Mr. and Mrs. Chapman were charged in the complaint with contriving and conspiring together to defraud *his* creditors. There appears to have been evidence offered by the plaintiff from which he claimed such charges to be proved. Under such circumstances the unexplained absence of either of them from the court, and an omission to testify, would have been a strong ground for an unfavorable presumption against them. LORD MANSFIELD, in *Blatch* v. *Archer,* 1 Cowper, 63, 65, said : " It is certainly a maxim that all evidence is to be weighed according to the proof which it was in the power of one side to have produced, and in the power of the other side to have contradicted." In Wharton's Evidence, § 1266,

Throckmorton *v.* Chapman et ux.

this same maxim is stated in still more forcible language : " The holding back of evidence may be used as a presumption of fact against the party who holds back such evidence in all cases where it could be produced." But this rule cannot be applied in the present case, because the record does not show an unexplained absence by either Mr. Chapman or his wife. As to Mr. Chapman it is found that he did appear and testify. And as to Mrs. Chapman, while it may be inferred that she was absent and did not testify, it does not appear but what such absence was fully explained.

It sometimes happens that the record sent up to this court from the court below presents a case from which it is difficult to see how that court reached the conclusion to which it came, and yet in which there is no apparent error. There are doubtless many instances in which it is no easy matter, even with the utmost care, to put into print, so that it can be seen by this court, an exact picture of the case as it was presented in the trial court. And when the manner and bearing of witnesses, their intelligence, character, and means of knowledge must be portrayed in order that the picture be correct, these difficulties are largely increased. And when, added to this, the record which comes up is only perfected some considerable time after the trial, and then as though it was not done as a whole but rather as in detached parts, it is not strange that this court should be sometimes perplexed to reconcile the judgment with the matters contained in the other parts of the record. The present is a case of that kind. While it seems to us from the record we have, that a different conclusion might more readily have been reached, we suppose it is because we are unable to see the exact case that was tried in the Superior Court.

There is no error.

In this opinion the other judges concurred.