MORRIS STEINERT *vs*. JAMES A. WHITCOMB ET AL.

Third Judicial District, Bridgeport, April Term, 1911.

HALL, C. J., PRENTICE, THAYER, RORABACK and WHEELER, Js.

A trial court should not set aside a verdict as being against the evidence where it is apparent that there was some evidence upon which the jury might reasonably reach their conclusion, and should not refuse to set it aside where the manifest injustice of the verdict is so plain and palpable as clearly to denote that some mistake was made by the jury in the application of legal principles, or as to justify the suspicion that they or some of them were influenced by prejudice, corruption, or partiality. Upon an appeal the question is, did the trial court fail to properly apply this rule of law? And, in determining this, all the evidence is to be considered and great weight should be given to the action of the trial court, and every reasonable presumption made in favor of its correctness.

The evidence in the present case reviewed, and the action of the trial court in setting aside the verdict *held* erroneous.

General Statutes, § 806, authorizing a party "in whose favor" a verdict has been rendered to appeal to this court from the action of the trial court in setting aside that verdict, permits an appeal by a defendant against whom the verdict was rendered.

The case of *McCann* v. *McGuire*, 83 Conn. 445, explained.

Argued April 11th—decided May 3d, 1911.

ACTION to recover damages for injuries to the person and carriage of the plaintiff, alleged to have been caused by the negligence of the defendants, brought to the Superior Court in New Haven County and tried to the jury before *Greene, J.;* verdict of $50 for the plaintiff, which the trial court, upon his motion, set aside as against the evidence, from which ruling

the defendants appealed. *Error and cause remanded with direction to render judgment for the plaintiff on the verdict.*

*Edwin S. Thomas,* for the appellants (defendants).

*Harry W. Asher,* for the appellee (plaintiff).

WHEELER, J. On motion the trial court set aside the verdict in favor of the plaintiff for $50, because the damages awarded were inadequate, and the defendants appeal from the granting of such motion. In determining this appeal "great weight is due to the action of the trial court, and every reasonable presumption should be made in favor of its correctness."

Our rule governing the action of the trial court over verdicts is perfectly clear. "It should not set aside a verdict where it is apparent that there was some evidence upon which the jury might reasonably reach their conclusion, and should not refuse to set it aside where the manifest injustice of the verdict is so plain and palpable as clearly to denote that some mistake was made by the jury in the application of legal principles, or as to justify the suspicion that they or some of them were influenced by prejudice, corruption, or partiality." *Burr* v. *Harty,* 75 Conn. 127, 129, 52 Atl. 724; *Birdseye's Appeal,* 77 Conn. 623, 625, 60 Atl. 111; *Bradbury* v. *South Norwalk,* 80 Conn. 298, 300, 68 Atl. 321; *Wyeman* v. *Deady,* 79 Conn. 414, 416, 65 Atl. 129.

The question of law arising upon the appeal is, did the trial court err through its failure to properly apply this rule of law in deciding the motion to set aside the verdict? The ascertainment of this involves a consideration of the entire evidence.

On every appeal of this character the controlling

question is whether the conclusion is one which the jury might reasonably have reached; one to which twelve honest men acting fairly and intelligently might reasonably have come. If it is, the verdict should stand; if it is not, it should be set aside.

The appellant urges that this court adopted a different rule in *McKone* v. *Schott*, 82 Conn. 70, 71, 72 Atl. 570, when it said that the court will set aside a verdict "only when the trial court misapplies or mistakes some principle of law, or manifestly abuses a discretion." The discretion referred to was a legal discretion, and the exercise of that involves consideration of whether there had been a disregard or misapplication of the rule which trial courts must follow in setting aside verdicts.

There has been no change in our rule; it is firmly intrenched in repeated decisions which illustrate the manner in which it has been applied.

The grounds of injury alleged were confined to injuries to the plaintiff's carriage, in that it was "badly broken, the front right wheel and axle and the rear right wheel and axle broken and smashed," and to his person, in that he "was severely shaken and bruised all over his body and his nervous system severely and dangerously shaken up."

The most that the evidence on either side tended to prove of the damage to the carriage was that two wheels were broken, one axle sprung, and several scratches made on the body of the carriage. It is true that the plaintiff testified that the carriage was all broken up, but he also testified he did not examine it after the accident and could not tell in what respect it was damaged.

No evidence was offered of the pecuniary damage to the carriage or the cost of its repair, except that the plaintiff testified that he gave the Holcomb Com-

pany "*carte blanche* to fix it, if it would cost one hundred dollars," and that they subsequently rendered him a bill of $55, which he paid.

No evidence was offered of the character of the carriage, save that it had been made to order for the plaintiff two years previously.

No evidence was offered of the condition of the carriage at or before the time of the accident.

No evidence was offered of the charge or value of the several items of repair described in the bill. The Holcomb Company was a New Haven concern, and none of its officers or employees appeared as witnesses, and no explanation for the absence of such testimony was furnished.

The majority of the items of the bill are not found in the testimony of the damage to the carriage caused by this accident, and, since no charge is placed against the items of the bill, the jury had before them no evidence of the value of those repairs made to the carriage which apparently were not the result of the accident. These items were substantial and not inconsequential parts of the total charge. In addition, the charge is for resetting axles, when the evidence was that one axle only was sprung.

Had objection been made, the bill, without further proof, should have been excluded. It came in without objection and was to be considered by the jury, although it could furnish little or no assistance to them in fixing the actual damage to the carriage. In no event would the jury have been justified in awarding the face of this bill. The repairs required gave them some guide, as the subject was one of practical everyday information.

The trial court held that the $55 charged upon this bill was paid only for the repairs to the carriage caused by the accident, and the court so concluded because

it understood the plaintiff "to testify that he ordered or authorized the repair only of the injuries done by the accident," and on the verdict "nothing or very little is left for damages for plaintiff's personal injuries."

As we have seen, this is a misconception of the testimony, due perhaps to the fact that the trial judge did not have before him the stenographic transcript of the testimony, and his conclusions were expressed some two months after the trial.

The proof was so meagre that the court on appeal could not conclude the jury acted unreasonably, if it knew that it gave only a part of the damages awarded for the injuries to the carriage.

The injuries to the person of the plaintiff, as found in the complaint, were shock and injury to the nervous system. The accident may be some measure of the extent of the shock.

In this case an automobile ran into the plaintiff's carriage as it stood by the curb, breaking the wheels nearest the curb and letting the carriage seat fall to the curb without throwing the plaintiff from the seat. The plaintiff testified he became unconscious; none of the other witnesses present so testified.

From the testimony of the plaintiff and his nurse, which was all of the testimony concerning injuries to the person before the jury, it appeared: The plaintiff at the time of the accident was suffering from a very severe attack of rheumatism from which he had so far recovered as to come in a carriage to his office for an hour or two a day for the past two weeks, although still in the care of a doctor and nurse. Shortly after the accident, he was taken to his home and remained in bed the rest of the day. For two weeks he suffered from the shock, and was nervous, but able to go riding each day and to his office at least once. His breathing

was affected by his nervous condition, and this continued for about two weeks. On the morning of the accident he was in fairly good condition. He had not recovered at the time the nurse left four weeks after the accident. And the plaintiff testified he still felt the effects of the accident.

It did not appear what, if any, portion of the attendance of doctor or nurse was due to the injury caused by the accident.

If there be placed upon this evidence the most favorable construction toward the plaintiff's claim possible, it indicates that the injuries were not serious and were incapable of supporting anything beyond very moderate compensatory damages.

The jury were not required to accept the statement of these witnesses, though they were uncontradicted by other witnesses. Their credibility was for the jury. It is not beyond the bounds of fair inference to reason that the jury may have thought these witnesses were so greatly interested that they magnified the consequences of this accident.

In this case, especially when the plaintiff was under a doctor's care, it may be the jury thought the injuries not severe, since the experienced nurse did not call the doctor on the day of the accident, and no explanation for such failure was given.

It may be the jury thought it extremely significant when the doctor, in attendance before and after the accident, did not appear as a witness; nor was his absence accounted for. He could have described the condition of health of the plaintiff, so that the jury could have reached an intelligent conclusion as to how much of his then ailment was due to the accident.

Affection of the nervous system is a disease whose diagnosis and treatment call for the experienced physician. The jury may properly have used the fact

that the attending physician did not testify as a presumption of fact against the plaintiff. *Throckmorton* v. *Chapman,* 65 Conn. 441, 454, 32 Atl. 930; *State* v. *Hogan,* 67 Conn. 581, 584, 35 Atl. 508.

It cannot be said that the sum remaining after their award for the damages to the carriage was not sufficient to cover the injury from shock.

The sum awarded was not so clearly insufficient as to stamp the verdict of the jury as unreasonable. It was the province of the jury to render the verdict, not of the court.

This record does not denote that the verdict was one which they might not reasonably have reached on the evidence before them.

The plaintiff further contends that this case is not properly before the court, inasmuch as General Statutes, § 806, permitted an appeal from the decision setting aside the verdict only to the party in whose favor the verdict was rendered. The plaintiff raised this point by motion to erase this appeal, and our denial of the motion ended plaintiff's right to further contest the point. An appeal by one in whose favor a verdict had been rendered, similar to this, was allowed in *McCann* v. *McGuire,* 83 Conn. 445, 447, 76 Atl. 1003, and is well within the equities of the statute.

There is error, and the cause is remanded with direction to the Superior Court to reverse the decision on the motion setting aside the verdict and granting a new trial, and to render judgment for the plaintiff on the verdict.

In this opinion the other judges concurred.