MODESTINO EZZO vs. ALBERT GEREMIAH.

Third Judicial District, New Haven, January Term, 1928.

WHEELER, C. J., MALTBIE, HAINES, HINMAN and BANKS, Js.

The plaintiff offered evidence to prove that as he was passing the defendant's automobile, after having given warning of his intention to do so, defendant's son, who was driving the car as his father's agent, turned to the left so that his left front wheel came in contact with the plaintiff's right rear wheel with considerable forward pushing force, causing the plaintiff's car to turn sharply to the left, run into a telephone pole near the left side of the road, and proceed thence into a field adjacent to the highway, where it overturned and was practically demolished. The defendant claimed that while the plaintiff was operating his car on the left side of the highway at a high rate of speed, his left rear wheel came first into contact with the telephone pole, which caused his car then to swerve to the right and into defendant's car before it left the road, and that this version of the accident was supported by the fact that the mudguards and headlight on the left side of plaintiff's car were badly damaged, whereas those on the right side were not. The jury returned a verdict for defendant. *Held:*

1. That the trial court was not justified in charging the jury, contrary to the plaintiff's testimony, that if the collision had occurred in the manner claimed by him, the momentum of his

Ezzo *v.* Geremiah.

car would necessarily have carried it to the right, since an instruction that a certain proposition is incontrovertibly demonstrated by the physical facts is only proper when it is entirely clear that no other conclusion is reasonably possible.

2. That the trial court's instruction that the marks claimed by defendant to have been found upon plaintiff's car were "very material, because that is something which did not forget and is not subject to the frailties of human recollection," was an unwarranted assumption that the existence of such marks was an established fact.

3. That the operator of a motor vehicle in passing another is bound to exercise ordinary care and not, as charged by the trial court, "great care," unless the surrounding circumstances present a situation of more than ordinary danger, which, in the absence of exceptional circumstances, is a question of fact for the jury.

4. That the charge was erroneous in assuming that the plaintiff might be found negligent from the mere fact that his car came in contact with the telephone pole, since that conclusion would not be reasonable if plaintiff's explanation of such contact were accepted.

5. That plaintiff was not required to "use good judgment and make good use of his senses," as stated by the trial court, but only to exercise the intelligence, understanding, judgment and care of a reasonably prudent person under similar circumstances.

6. That the trial court's instruction that defendant's unexplained failure to call as a witness his son, who was in the court room, should in no way operate to his disadvantage, was not in conformity with the fundamental maxim that all evidence is to be weighed according to the proof which it is in the power of one side to produce and of the other side to contradict.

7. That questions relating to the bringing and settlement of suits by defendants and others against plaintiff arising out of the same accident were not admissible in evidence against him.

8. That the report of the accident made by defendant's son to the Commissioner of Motor Vehicles, as required by § 11 of Chapter 257 of the Public Acts of 1923, and recorded in the commissioner's office under the provisions of § 3 of Chapter 400 of the Public Acts of 1921, did not, especially with respect to the guarantee of trustworthiness, stand upon the same plane as a statement made by a public official for a public record, and was not, therefore, admissible as coming within that recognized exception to the hearsay rule; but that it was admissible as a declaration by defendant's agent, whose authority must be presumed to have included, as a necessary incident to the operation of the car, the making of such a report in the event of an accident.

Argued January 24th—decided June 14th, 1928.

ACTION to recover damages for injuries to the person and property of the plaintiff, alleged to have been caused by the negligence of the defendant, brought to the Superior Court in New Haven County and tried to the jury before *Nickerson, J.;* verdict and judgment for the defendant, and appeal by the plaintiffs. *Error and new trial ordered.*

*Charles S. Hamilton* and *Joseph N. Manfreda,* for the appellant (plaintiff).

*Charles J. Martin,* with whom, on the brief, was *Walton E. Cronan,* for the appellee (defendant).

WHEELER, C. J.　Upon the trial to the jury, the plaintiff offered evidence to prove: On June 8th, 1925, the defendant owned an automobile which he kept for family purposes and his son and agent by his permission was driving it in Wallingford northerly along North Colony Street which at this point was paved with macadam eighteen feet in width, with a dirt shoulder two and one half feet on either side and sloping down to the abutting properties.　The plaintiff was also driving his car in the same direction on this street and in the rear of the defendant's automobile. The plaintiff, intending to pass defendant's car on the left, extended his left arm to indicate he was turning out on that side, blew his horn, and started ahead. As he was about to pass the automobile of the defendant, leaving room for defendant's car to travel if it kept on the right of the center of the highway, the driver of defendant's car turned suddenly to the left, bringing the left front wheel of his car in contact with the rear right wheel of the car of the plaintiff, with a good deal of forward pushing force, thereby causing the plaintiff's car to turn sharply around in the street to the left

(west), and to get out of plaintiff's control, and to run off the street and come in contact with a telephone pole which stood near the west side of the street, and thence to run off the highway on the left-hand or west side and into a field adjacent to the highway when it overturned, practically demolishing it into junk, for which it was subsequently sold.

The defendant offered evidence to prove: Plaintiff's car was being operated at a high rate of speed, estimated at thirty miles an hour, and while he was passing on the left of other automobiles on this street plaintiff's car was headed directly for a telephone pole on the left-hand or west side of this street and its left rear wheel came in contact with the side of the telephone pole next to this street, knocking a large splinter therefrom and causing the car of the plaintiff to swerve toward the east and into the highway, where it collided with the car operated by defendant's son, which was east of the center of the highway and headed north, and thereafter the car of the plaintiff continued to turn and ultimately landed upside down off the westerly side of the paved portion of the macadam roadway. The car operated by defendant's son, after being struck by the plaintiff, went on a short distance, tilted on its right-hand side and turned over. The right front and rear mudguards of the plaintiff's car were not dented or damaged, and the right-hand headlight glass was not broken. The left front mudguard of the plaintiff's car was badly damaged, bent and dented, and the glass in the left front headlight was broken and shattered. The left forward wheel of the defendant's car had the tire ripped off. The left front and rear mudguards were dented, but not as severely as those on the plaintiff's car.

We will confine our consideration of the errors assigned to those in the charge and in the rulings on

Ezzo *v.* Geremiah.

evidence which we deem important, or which are likely to arise upon the new trial. There were two diametrically opposing versions of how this accident occurred; the plaintiff's, that, as he was passing to the left of the defendant's car, after having given due notice of his purpose so to do, the defendant turned his car to the left and the left front wheel of his car came in contact with the right rear wheel of the plaintiff's car, with a strong pushing force. The court, in effect, charged that if this had occurred the momentum of the plaintiff's car would have necessarily carried it to the right. This was exactly contrary to the testimony and claim of the plaintiff. It tended strongly to support the defendant's version of the cause of the accident, that the plaintiff's car, as it was passing to the left, because of its speed and plaintiff's negligence ran into a telephone pole just west of the left-hand side of this roadway and as a consequence was catapulted to the right, where it collided with defendant's car which was east of the center line of the roadway, that is, on the right-hand side of the traveled way. If the jury accepted the court's statement, it reached its conclusion upon the consideration of a fact which was vitally important, but which neither the evidence nor the physical facts supported. The court was right in attempting to make plain the issues of the case and what it regarded as the facts in evidence. It should not have instructed the jury that the facts disclosed a physical demonstration of the course of the plaintiff's car unless it was entirely clear that no other result could follow. If doubt exists as to such a matter it should be left to the jury to find as a fact. The court may state its opinion that, if the jury find certain facts proven, they will constitute a physical demonstration of a fact. It should not charge that they will establish the fact incontrovertibly, unless it is entirely clear that no other conclusion is rea-

sonably possible. As a result of this accident the plaintiff claimed his car was so damaged that it had become mere junk; the defendant claimed that the marks upon the plaintiff's car tended to disprove the plaintiff's claim as to the manner in which these cars collided. The court emphasized the significance of the marks upon the plaintiff's car, and added: "And there again the actual condition of these cars is very material, because that is something which did not forget and is not subject to the frailties of human recollection." The charge practically assumed as an established fact in the case this claim of the defendant upon a strongly contested and highly material point in the case. We cannot hold this to have been harmless error.

The court further charged: "When a man starts out upon a road or highway like that to pass another car, then it is that great care would ordinarily be required." Assuming a roadway of reasonable width, such as this, for a car to pass, the giving of reasonable notice by the driver of the car desirous of passing to the car ahead, and no other unusual conditions of traffic or roadway, the driver attempting to pass is not required to use more than ordinary care in the driving of such an instrumentality. He would not be required, ordinarily, to use great care; the standard of ordinary care will not become great care unless the circumstances present a case of more than ordinary danger in passing the car ahead. And whether they do or not will be a question of fact for the jury unless the circumstances be so exceptional as to make of it a question of law, which was not this case.

In this case the court charged: "Was his conduct, in what he did there, swerving as he did, running into a telegraph or telephone pole, confessedly, the conduct of an ordinarily prudent man?" This assumes, erroneously, that the jury might find the plaintiff negli-

gent, whether he came in contact with the pole as he claimed, or as the defendant claimed, whereas, if they found the contact was made as the plaintiff claimed, there could be no negligence upon his part in that act, but if they found the contact made as defendant claimed, his negligence would be all but conclusively proved. The court also charged that the plaintiff should "conduct himself as a prudent man would do under the circumstances," and then added, "and that he should use good judgment and make good use of his senses." The accepted rule is that he should conduct himself as a reasonably prudent person would under like circumstances. He is not required to act as an absolutely prudent man would, but as a reasonably prudent man would. . He is not necessarily required to use good judgment or to make good use of his senses; he is required to use such intelligence, understanding, judgment and care as the reasonably prudent person would use under like circumstances.

One other instruction the appellant especially relies upon. The driver of the defendant's car was his son and, in what he was then doing, his agent. He was in the court room and was not called as a witness by the defendant, nor was explanation furnished for the failure to call him. The court charged: "There is no presumption of fact against the defendant for holding back evidence, unless there is an actual withholding. Where, as it appears in this case, the witness is in court, or is available to be called by either side, neither side can claim such a presumption against the other. The circumstance that a particular person who is clearly within the control of both parties is not called as a witness, is too often made the subject of comment before the jury. Such a fact lays no ground for any presumption against either party. If the witness could

aid either party, such party would probably produce him. As he is not produced, the jury have no right to presume anything in respect to his knowledge of any facts in the case, because they are to try the case upon the facts shown by the evidence and upon them alone, without attempting to pass on what might be shown if particular persons were produced by the parties. So, gentlemen, it appears here in this case that this driver has been about the court room; the fact that he was not called should not act any more to the disadvantage of one party than it does to the other, in my judgment, and I so charge you." The instruction does not conform with our rule of law. The failure of a party to produce a witness who is within his power to produce and who would naturally have been produced by him, permits the inference that the evidence of the witness would be unfavorable to the party's cause. The failure to offer such evidence is not proof of any specific fact, but it does permit the inference that the evidence of the witness would be unfavorable to the party's cause to be weighed with the entire evidence in the case, and not infrequently this inference when so weighed may tip the scales against the party in default. *Cupo* v. *Royal Ins. Co.*, 101 Conn. 586, 592, 126 Atl. 844; 1 Wigmore on Evidence (2d Ed.) § 285; *Ford* v. *Dubiskie & Co., Inc.*, 105 Conn. 572, 136 Atl. 560; *Newtown* v. *Southbury*, 100 Conn. 251, 254, 123 Atl. 278; *Steinert* v. *Whitcomb*, 84 Conn. 262, 267, 79 Atl. 675; *Throckmorton* v. *Chapman*, 65 Conn. 441, 454, 455, 32 Atl. 930. "It is certainly a maxim that all evidence is to be weighed according to the proof which it was in the power of one side to have produced, and in the power of the other side to have contradicted." Lord Mansfield, in *Blatch* v. *Archer*, 1 Cowper, 63, 65; *Throckmorton* v. *Chapman, supra,* p. 454; *State* v. *Hogan*, 67 Conn. 581, 584, 35 Atl. 508; *Katz*

v. *Commercial Bank & Trust Co.*, 102 Conn. 57, 60, 127 Atl. 920; *Cupo* v. *Royal Ins. Co., supra,* p. 592. Circumstances in explanation of the failure to produce a witness may always be shown. *Verdi* v. *Donahue,* 91 Conn. 448, 99 Atl. 1041; *State* v. *Hogan, supra,* p. 584.

Two rulings on evidence should be noted. The record is not satisfactory upon the first of the rulings we shall discuss, but as we gather it from the record under rulings, seven, eight, nine and ten, the situation was this: On cross-examination defendant inquired of plaintiff if he had not been sued in actions brought by defendant and others resulting from this accident. The plaintiff objected because, if admissible, the files were the best evidence. The objection was overruled and the witness answered in the affirmative. Nothing appears in the record to disclose any basis for the admission of this question. The objection made was, of course, untenable. Thereafter plaintiff introduced evidence of the withdrawal of these actions and defendant then introduced the files of the actions against the objection of the plaintiff. Defendant's counsel then inquired of defendant if these cases were settled and against plaintiff's objection the witness replied they were. The objection should have been sustained, if for no other reason, because the parties were different. In rebuttal the plaintiff was asked by his counsel if he paid any money in settlement and upon objection this was excluded. If the fact of settlement were admissible, whether anything was paid or not was admissible. None of these rulings would constitute reversible error. The record of these rulings shows how far afield the first inadmissible question carried the course of this trial.

The plaintiff offered in evidence a certified copy of the report made by the driver of the defendant's car

to the Department of Motor Vehicles for the State of Connecticut concerning the accident and how it occurred. Upon objection the offer was excluded. Its admissibility is now claimed (a) as a report made to a public official of the State under authority of the statute; (b) as a statement made by defendant's agent by compulsion of the law. Section 3 of Chapter 400 of the Public Acts of 1921, p. 3424, provides: "Said commissioner shall keep a record of proceedings and orders pertaining to the matter under his jurisdiction and of all licenses and certificates granted, refused, suspended or revoked by him and of all reports sent to his office." Section 11 of Chapter 257 of the Public Acts of 1923, p. 3719, provides: "The operator, whether resident or nonresident, of any motor vehicle involved in an accident resulting in personal injury or damage to property to an apparent extent in the excess of ten dollars, within twenty-four hours thereafter, shall make a written report of the circumstances thereof to the commissioner of motor vehicles and shall supplement such report by a detailed statement, under oath, on blanks to be provided by the commissioner, which shall be as nearly accurate as may be ascertained and shall state the time, place and cause of such accident, the injuries occasioned thereby and such other facts as the commissioner may require."

We have indicated in *State* v. *Torello,* 103 Conn. 511, 131 Atl. 429, in our summary of our decisions, how far we have gone in enlarging this exception to the hearsay rule. These cases concern a duty imposed by statute upon a public official. The offer before us concerns a duty imposed by statute upon a private citizen to make a report of an accident in which he, as operator of a car, has been engaged. There is, as it seems to us, a wide difference between the report made by a public officer to a public office, and one made by a

private citizen to a public office. The exception to the rule is based upon the fact that the report of the public official can be relied upon for its trustworthiness. The public official may act only occasionally, but when he does act he knows and feels that he is acting under the sanction of his official place. Experience has led to the conclusion that it is ordinarily safe to rely upon the trustworthiness of a report made under such circumstances. But there is no such reliance to be placed in the report made by a private citizen to a public office under a duty imposed by statute. He may have, as he had in this case, the interest of self-protection and the protection of his principal in what he reports. We do not think it would be safe to permit the introduction of such evidence upon the ground that the report is made pursuant to a duty imposed upon a private citizen by a statute. The legislature might, if it had seen fit, have made this report prima facie evidence, as it has in a number of instances, where reports or certificates are required to be filed in a public office, but it has not done this. The report ought not to be admitted in evidence upon this ground.

The driver was the defendant's son, operating the defendant's family car. He was the agent of the defendant in the operation of the car. If he had made a statement, shortly after the accident, as to how it occurred, it would not have been admissible, for the driver's agency would then have terminated. *Morse* v. *Consolidated Ry. Co.*, 81 Conn. 395, 71 Atl. 553. But when the defendant constituted his own son the operator of the car and his agent for that operation, the statute imposed upon the agent the duty of reporting the accident within twenty-four hours thereafter. That duty became a part of the agency. For that purpose his agency continued by operation of

law. When defendant appointed this agent, presumptively, he knew that this was a duty of the agency imposed by law. Under these circumstances we cannot hold that, in making this report, he was not acting as the defendant's agent. His work was not completed until he had made this report. It was therefore admissible against the defendant as a declaration of his agent made in the course of his agency. *Carrano* v. *Hutt,* 93 Conn. 106, 113, 105 Atl. 323.

There is error and a new trial is ordered.

In this opinion the other judges concurred.