## JOSEPH ROBERT SOMERS
vs.
## GEORGE REARDON

Superior Court　　　New Haven County　　　File #53094

MEMORANDUM FILED JUNE 21, 1938.

Cornelius T. Driscoll, of Branford; Louis Weinstein, of New Haven, for the Plaintiff.

D. L. O'Neill, of New Haven, for the Defendant.

McEVOY, J. On November 12, 1937, at about 5:00 to 5:15 p.m., the defendant owned and was operating a 1935 model four-door Oldsmobile sedan on the north cement panel or lane of the Boston Post Road in a westerly direction easterly of the town of Branford, Connecticut.

The road was divided into two cement panels or lanes, each ten feet wide, with the shoulders on the northerly side substantially three and a half to four feet in width.

The road was practically level and it was dry. The weather was clear. On that day the sun set at 4:36 p.m.

As the defendant proceeded westerly along the Boston Post Road the speed of his car, just prior to the incident out of which this action arises, was about 40 miles per hour; there was no traffic from the west, but, at least two cars were following the defendant in a westerly direction. The defendant's two forward headlights were on and shone brightly. His two taillights were also functioning and the wheel brakes and the emergency brake were in good order.

As the defendant proceeded westerly he saw an object on the northerly concrete lane and ahead of him along which he was driving and this object was lying diagonally across the lane, upon which the defendant was driving, at an angle of about 45 degrees. At that time the defendant was operating his car at about 40 miles per hour. The defendant's forward lights were not then set at their "long distance" height but were set on a "running light" standard such as is commonly used in city traffic. By the use of the lights as set the defendant could see objects in front of him for a distance of from 200 to 250 feet.

When the defendant first saw the object lying on the road ahead of him he mistakenly supposed than it was a human body and it was then between 150 to 200 feet ahead of him.

If the defendant had applied his foot brakes when he first saw the object in front of him he could have stopped his car, which he was then operating at about 40 miles per hour, in the space of 126 feet. The defendant also had available for use an emergency brake which he could have but did not use.

As the defendant's car approached the object in the road the defendant gradually reduced his speed and, suddenly, without any warning, the defendant turned his car abruptly to the south—defendant's left—at a sharp angle so that it entered, diagonally, upon and partially across the southerly or eastbound lane of the concrete panel of the road.

Prior to that time the plaintiff was operating a Chevrolet business coupe, 70 days old, equipped with brakes and lights which were in good working order and, at least, one horn, a Klaxon. The plaintiff was accompanied by two mates from the Naval Academy and was on his way from New London to Washington, D. C., and had followed the defendant's car for several miles. Approaching the locus in question the defendant was followed by another car and then by the plaintiff's car, which latter was being operated at a speed of about 40 to 45 miles per hour.

Upon entering the straight stretch of road, adjacent to poles No. 36357 and No. 36558, the plaintiff undertook to pass to the left of the car then following the defendant's car. The plaintiff gave reasonable warning of this intention by an audible, sustained blowing of the Klaxon horn. When the plaintiff attempted to pass to the left of the defendant's car the road was straight; no traffic was approaching from the west, nor was any other traffic approaching from the east; the space was ample and the plaintiff acted as a reasonable man, so placed, would have acted, that is, he acted with reasonable care under all of the circumstances then surrounding him.

When the defendant suddenly turned his car sharply to his, defendant's, left-hand side he did so without having given any reasonable indication or signal of his intention so to do and he acted, not as the ordinarily prudent man, so placed, would have acted, but negligently and carelessly.

Under the circumstances the defendant was "not required to act as an absolutely prudent man would, but as a reasonably

prudent man would. He (was) not necessarily required to use good judgment or to make good use of his senses; (but) he (was) required to use such intelligence, understanding, judgment and care as the reasonably prudent person would use under like circumstances." *Ezzo vs. Geremiah,* 107 Conn. 670, 676.

As the defendant suddenly turned to his left directly in front of the plaintiff, the latter immediately made every reasonable effort to avert a collision with the car of the defendant and promptly turned to his, plaintiff's, left and applied his brakes, in an endeavor to go around the car of the defendant but, while engaged in this endeavor, the plaintiff's car "slewed" around and its side collided with a pole which was off the left side of the road and with such force that, although the pole was severed in twain, yet the severed end dropped to the ground and yet the pole remained erect.

By reason of the collision with the pole the plaintiff was thrown out of the car on to the ground and one of his mates, who was riding with him, was also thrown out so that he fell on top of the plaintiff and the plaintiff was seriously and severely injured.

The injuries to the plaintiff were occasioned by the negligence of the defendant, both common-law and statutory, and the negligence of the defendant materially contributed to and was a substantial factor in causing the injuries to the plaintiff, and nothing which the plaintiff did or omitted to do materially contributed to or was a substantial factor in causing any of the injuries which he sustained and suffered.

The injuries which the plaintiff sustained may fairly be described as follows: a transverse fracture of the upper third of the left femur; a severe laceration on the left side of his forehead, which has occasioned a permanent scar; an abrasion on the left side of the plaintiff's chin; abrasions on the left arm and left hand and an injury to the plaintiff's back.

The treatment of these injuries was prompt and well ordered. The bone of the leg was set and placed in a heavy plaster spica extending upward to the nipples. Subsequently, on December 6, 1937, the spica was removed; a better alignment made, and the spica replaced.

On December 22, 1937 the spica was again removed and an operation performed by way of treatment of lyplastis cast.

Again on January 24, 1938 the cast was removed and treatment given to correct "bowing" and the cast reapplied.

These varying treatments continued almost to the date of the trial.

Upon the trial it appeared that the plaintiff still has considerable limitation in the movements of his left leg and that its function is about 66 per cent normal. He still has a decided "limp" and the prognosis is that this limp will continue until plaintiff obtains complete relief in the knee-joint.

By reason of these injuries the plaintiff has been delayed in his studies and normal preparation and has, and in the future will, sustain loss by this reason.

An examination of the hospital records and of the general medical and surgical history clearly shows that the plaintiff has undergone constant and, sometimes, excruciating pain. The hospital record shows an absence of audible complaint on the part of the plaintiff but it also indicates fortitude, patience and cooperation on the part of the plaintiff, and that he did everything possible to mitigate damages. His whole attitude in narration of facts and description of injury and the attendant suffering and discomfort was refreshingly candid and might well be characterized as under-statement rather than exaggeration.

By reason of these injuries the plaintiff has become obligated as follows:

1. Expense for nurse ........................................$ 8.00
2. Grace Hospital .......................................... 157.41
3. Dr. Alpert .............................................. 15.00
4. Dr. Levy ............................................... 75.00
5. Dr. Overman ........................................... 150.00

These items total ........................................$405.41

In addition to this obligation the plaintiff's advancement to a higher stand at the Naval Academy has been delayed; his studies postponed and his advance in compensation halted.

He has also received, without apparent charge to him, valuable medical, surgical and other services at the Naval Hospital, and he is, to some extent at least, still receiving or liable to receive these services.

In *Hayes vs. Morris & Co.*, 98 Conn. 603, 607, quoting from Sutherland on Damages, our Supreme Court said: "Generally there can be no abatement of damages on the principle of partial compensation received for the injury where it comes from a collateral source, wholly independent of the defendant, and is as to him res inter alios acta . . . ."

In subsequent cases the same principle has been applied to medical, surgical and hospital services rendered to the injured person.

No evidence was offered upon this trial as to the reasonable value (to the defendant) of these services.

Upon another trial such evidence might be pertinent.

Prior to the sustenance of these injuries the plaintiff was enlisted in the United States Navy; 23 years old; 70 inches high; weighed 165 pounds; and was in about as good mental and physical condition as a human being may be.

He suffered severe injuries and unusual pain.

The issues are found in favor of the plaintiff and against the defendant and judgment may be entered in favor of the plaintiff to recover of the defendant his actual obligations in the sum of $405.41. To which is added for injuries, pain and suffering $4,000. Total, $4,405.41.

For this sum and his costs judgment may be entered in favor of the plaintiff and against the defendant.