### STATE OF CONNECTICUT *v.* TIMOTHY C. SHASHATY
### (13061)

PETERS, C. J., HEALEY, SHEA, CALLAHAN and COVELLO, Js.

Argued June 4—decision released August 18, 1987

*John R. Williams,* for the appellant (defendant).

*Steven M. Sellers,* assistant state's attorney, with whom, on the brief, were *John J. Kelly,* state's attor-

ney, and *James G. Clark,* assistant state's attorney, for the appellee (state).

SHEA, J. The Appellate Court upheld the judgment of the trial court rendered in accordance with a jury verdict finding the defendant guilty of the crimes of sexual assault in the first degree, in violation of General Statutes § 53a-70 (a), and unlawful restraint in the first degree, in violation of General Statutes § 53a-95 (a). *State* v. *Shashaty,* 8 Conn. App. 387, 513 A.2d 172 (1986). The Appellate Court ruled that the trial court had committed harmless error in (1) giving the jury an unwarranted "missing witness" instruction, and (2) permitting the state to introduce evidence of the defendant's silence prior to his arrest but after receiving *Miranda* warnings. Having certified this appeal, we affirm the judgment of the Appellate Court.

Although the facts that the jury could reasonably have found are set forth in *State* v. *Shashaty,* supra, we summarize those pertinent to the issues in this appeal. On March 6, 1983, the victim, an eighteen year old high school girl, attended a party at a friend's home in Milford. The defendant, Timothy C. Shashaty, who had never met the victim before, also attended the party. At about 9 p.m. the defendant borrowed a car and drove the victim to a store to purchase cigarettes, at which time the two engaged in "just small talk." Later in the evening, at about 11 p.m., after the victim had fought with another guest over the disappearance of the victim's purse, the defendant spoke with the victim, who had locked herself in the bathroom, for about ten minutes. When the victim went back downstairs, the two spoke again for about thirty minutes, during which time the defendant "tried to kiss [her] a few times." After resisting the defendant's advances, the victim, sometime between 12:30 and 1 a.m., left the party and began to walk home.

The defendant followed the victim and caught up with her on Gulf Street. When the victim rebuffed the defendant's demand that she walk with him, the defendant lifted her onto his shoulders and started walking down the street. In response to the victim's screams, the defendant stated, "If I put you down, you have to let me hold your hand and walk with you." The victim acceded to the defendant's demand, and the two walked hand-in-hand for a while. When the victim eventually indicated that, in order to go home, she had to turn left, the defendant picked her up once again and, ignoring her screams, carried her toward the right. The defendant took the victim across New Haven Avenue to the yard of a house, dropped her to the ground, partially removed her pants, and forced her to have sexual relations with him.

Four days later, on March 10, 1983, two Milford police officers drove to the defendant's home and "informed him that his name had come up in an investigation." One of the officers, William Graham, asked the defendant whether he would agree to meet at the police station later in the day to discuss the matter. The defendant agreed and went to the station that afternoon. At the subsequent interview, Graham initially told the defendant that "he was not under arrest and he could leave any time. He was free to go." The defendant then gave an oral statement accounting for his time on the night of the assault. Prior to signing the typewritten transcript of that account, the defendant was advised of his rights under *Miranda* v. *Arizona,* 384 U.S. 436, 467–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), and then signed a standard waiver form.

In his written statement of March 10, 1983, the defendant denied any involvement in the sexual assault. He stated that he had left the party at about 1 a.m. with his girlfriend, and two other guests. The defend-

ant stated that the four had departed in a car, and that he had been taken directly home and had gone straight to bed.

The defendant was arrested on March 23, 1983, after being formally charged in a two count information with the crimes of sexual assault in the first degree and unlawful restraint in the first degree. At the trial, the three persons with whom the defendant, in his March 10, 1983 statement, said that he had been driven home, testified that he had remained at the party after they had departed. The party hostess testified similarly. The defendant, testifying in his own behalf, stated that he had hitchhiked home after leaving the party and that someone named Mark had picked him up and driven him home. The defendant was convicted of the crimes charged and sentenced to a total term of six years. From the Appellate Court judgment affirming the judgment of the trial court, the defendant has brought the present appeal.

I

The defendant first claims that the Appellate Court erred in ruling that the unwarranted "missing witness" instruction given by the trial court constituted harmless error. The trial court charged the jury as follows: "It is the law of the state that the failure of a party to call a witness or witnesses who are within its power to produce entitles you, the jury, to infer that the testimony of such witness or witnesses would be unfavorable to that party.

"In this case, the defendant testified that, after leaving the party . . . he hitchhiked and received a ride from a person whose first name he knew to be Mark. Consistent with the rule I have just stated, you may consider the failure of the defendant to call this person."

The missing witness instruction is commonly known as the *"Secondino* charge," by virtue of this court's holding in *Secondino* v. *New Haven Gas Co.,* 147 Conn. 672, 165 A.2d 598 (1960). The *Secondino* court reiterated the rule that " '[t]he failure of a party to produce a witness who is within his power to produce and who would naturally have been produced by him, permits the inference that the evidence of the witness would be unfavorable to the party's cause.' " Id., 675; *Ezzo* v. *Geremiah,* 107 Conn. 670, 677, 142 A. 461 (1928). "There are two requirements for the operation of the rule: The witness must be available, and he must be a witness whom the party would naturally produce." *Secondino* v. *New Haven Gas Co.,* supra; see *State* v. *Roma,* 199 Conn. 110, 120, 505 A.2d 717 (1986); *State* v. *Hart,* 198 Conn. 424, 428, 503 A.2d 588 (1986).

The state concedes that the *Secondino* charge given by the trial court in the present case was both unwarranted and incorrect as a matter of law. First, the state offered no evidence in support of the instruction to show that the missing witness, Mark, was available. See *State* v. *Boyd,* 178 Conn. 600, 605, 424 A.2d 279 (1979); *State* v. *Long,* 171 Conn. 18, 21, 368 A.2d 199 (1976). Second, the instruction as delivered did not adequately apprise the jury of both prongs of the *Secondino* rule. See *Secondino* v. *New Haven Gas Co.,* supra, 676–77. To require a reversal, however, error must be harmful. Id., 677.

The Appellate Court reasoned that, "[b]ecause the defendant's claim of error involves only an evidentiary matter, and not the violation of a constitutional right, the burden of proving the harmfulness of the charge rests upon the defendant." *State* v. *Shashaty,* supra, 391–92. In this appeal the defendant suggests that the *Secondino* charge, "even if otherwise proper under local rules of evidence," implicates constitutional rights because "it violates the presumption of innocence and

shifts the burden of proof from the prosecution to the defendant." This court, however, has held to the contrary. See *State* v. *Annunziato,* 169 Conn. 517, 538, 363 A.2d 1011 (1975); see also *State* v. *Peary,* 176 Conn. 170, 182, 405 A.2d 626 (1978), cert. denied, 441 U.S. 966, 99 S. Ct. 2417, 60 L. Ed. 2d 1072 (1979). We have recognized, moreover, that the evidentiary basis for the *Secondino* inference derives from the maxim that " 'all evidence is to be weighed according to the proof which it was in the power of one side to have produced, and in the power of the other side to have contradicted.' " *Ezzo* v. *Geremiah,* supra, quoting *Blatch* v. *Archer,* 1 Cowper 63, 65 (1774) (Lord Mansfield); see also *Throckmorton* v. *Chapman,* 65 Conn. 441, 454, 32 A. 930 (1895). Accordingly, we agree with the Appellate Court that, because the erroneous instruction engenders a claim arising under state law and does not involve any constitutional right, the defendant bears the burden of proving harmful error. See *State* v. *Silva,* 201 Conn. 244, 250, 513 A.2d 1202 (1986); *State* v. *Conroy,* 194 Conn. 623, 627, 484 A.2d 448 (1984).

In order to meet his burden of proving that the unwarranted *Secondino* charge constituted harmful error, the defendant must show that the charge was likely to have affected the verdict. *State* v. *Brown,* 187 Conn. 602, 611, 447 A.2d 734 (1982); *State* v. *McClain,* 171 Conn. 293, 300, 370 A.2d 928 (1976). This he has not done. The state's case against the defendant was a strong one. See generally *State* v. *Gonzalez,* 197 Conn. 677, 682-83, 500 A.2d 1330 (1985). The victim positively identified the defendant as her attacker. Further, the condition of the clothing worn by the victim the evening of March 6, 1983, which the state introduced into evidence, tended to corroborate the victim's version of the facts. Her sweater and slacks were stained with soil and grass, and traces of sperm were found on her underwear. Additionally, the credibility of the defend-

ant had already been significantly damaged when he admitted, while being cross-examined, that his statements to the police on March 10, 1983, had been lies. In the light of this admission, any further harm to the defendant's credibility resulting from the Secondino instruction must reasonably be seen to have been minimal.

Finally, it is significant to note that the victim's factual account accusing the defendant of sexual assault and the defendant's alibi story at trial were not necessarily mutually exclusive. In other words, even if the jurors believed the defendant's claim that he had hitchhiked home after the party and had received a ride from someone named Mark, they might have also believed that the defendant had assaulted the victim prior to being picked up. The defendant's failure to show any inconsistency between his alibi and the victim's complaint further supports our conclusion that the defendant has not carried his burden of proving that the court's error was harmful under the standard applicable to a nonconstitutional error. We therefore hold that, under the circumstances of this case, the Appellate Court correctly determined that the erroneous *Secondino* charge given by the trial court was harmless.

## II

The principal issue in this appeal is whether the state may introduce evidence of a defendant's silence after he has received *Miranda* warnings but prior to his arrest. In its rebuttal presentation, the state questioned Graham, the police officer who had taken the defendant's statement on March 10, 1983, about the defendant's failure to correct that statement between March 10 and March 23, the date of his arrest.[1] The

---

[1] The following portion of the transcript records, in relevant part, the rebuttal examination of Officer William Graham:

"Q. And between March 10, which you previously testified was the date that you had occasion to interview Mr. Shashaty and March 23, the date

defendant challenges the ruling of the Appellate Court that the error of the trial court in permitting such questioning by the state was harmless beyond a reasonable doubt. The state, on the other hand, urges us to affirm the judgment of the Appellate Court upon the alternative ground that, because the defendant was not in custody when he gave his March 10, 1983 statement, any evidence of the defendant's silence prior to his arrest was properly admitted.

Our analysis of the circumstances of this case differs from that of the Appellate Court. The Appellate Court assumed that the questioning by the police of the defendant on March 10, 1983, constituted "custodial interrogation." See *State* v. *Shashaty,* supra, 393. The court then held that the admission into evidence of the defendant's subsequent silence was erroneous under the rule of *Doyle* v. *Ohio,* 426 U.S. 610, 619, 96 S. Ct. 2240, 49 L. Ed. 2d 91 (1976), that "the use for impeachment purposes of [a defendant's] silence, at the time of arrest and after receiving *Miranda* warnings, violate[s] the Due Process Clause of the Fourteenth Amendment." See *State* v. *Shashaty,* supra. Relying upon *Chapman* v. *United States,* 547 F.2d 1240 (5th Cir.), cert. denied, 431 U.S. 908, 97 S. Ct. 1705, 52 L. Ed. 2d 393 (1977), however, the Appellate Court concluded that the *Doyle* error in the present case was harmless beyond a reasonable doubt. *State* v. *Shashaty,* supra, 394–95. The *Chapman* court had stated that, "[w]hen there is but a single reference at trial to the fact of

on which he was placed under arrest, at any time, did you receive any contact from him and information from him that he had either been mistaken or lied in his statement to you?

"A. No.

"Q. At any time during that period [of] time, namely March 10 to March 23, were you advised of the existence of any individual by the name of Mark, who allegedly picked him up while he was hitchhiking home from [the] party on March 6?

"A. No."

defendant's silence, the reference is neither repeated nor linked with defendant's exculpatory story, and the exculpatory story is transparently frivolous and evidence of guilt is otherwise overwhelming, the reference to defendant's silence constitutes harmless error." *Chapman* v. *United States,* supra, 1250.

We disagree with the Appellate Court that the defendant was in police custody on March 10, 1983, when he gave his alibi statement that later proved to be false. As we have detailed, Graham and an accompanying Milford police officer went to the defendant's home and asked the defendant whether he would agree to stop by the police station to discuss the alleged sexual assault. The defendant was not in the company of the police when he arrived at the station later that day. At that time Graham told the defendant that "he was not under arrest and he could leave any time." Further, the defendant left the police station freely, approximately one hour after the interview had begun. It is clear that, under such circumstances, the March 10, 1983 interview of the defendant was not a "custodial interrogation." See *Oregon* v. *Mathiason,* 429 U.S. 492, 495, 97 S. Ct. 711, 50 L. Ed. 2d 714 (1977); *Hunter* v. *State,* 590 P.2d 888, 895 (Alaska 1979); 1 W. LaFave & J. Israel, Criminal Procedure (1984) § 6.6.

Because the defendant was not under arrest or otherwise in custody when he went to the police station on March 10, 1983, the giving of *Miranda* warnings was not essential before the police interrogated him. "[P]olice officers are not required to administer *Miranda* warnings to everyone whom they question. Nor is the requirement of warnings to be imposed simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect. *Miranda* warnings are required only where there has been such a restriction on a person's freedom

as to render him 'in custody.' " *Oregon* v. *Mathiason,* supra; see *Miranda* v. *Arizona,* supra, 467–69; *State* v. *Vitale,* 197 Conn. 396, 411, 497 A.2d 956 (1985).

The issue before us, however, is not whether *Miranda* warnings were required, but whether, once the police had given them, the defendant may have relied upon their assurance of his right to remain silent so that the rebuttal testimony concerning his failure, after receiving the warnings, to correct the statement he had made to the police violated his right to due process. Neither this court nor any federal court has yet had occasion to consider the issue before us, whether the use of a defendant's pre-arrest, but post-*Miranda,* silence violates his due process rights under the United States constitution.[2] As we have noted, *Doyle* v. *Ohio* proscribes the use for impeachment purposes of a defendant's silence subsequent to his arrest and after receiving *Miranda* warnings. "The point of the *Doyle* holding is that it is fundamentally unfair to promise an *arrested* person that his silence will not be used against him and thereafter to breach that promise by using the silence to impeach his trial testimony." (Emphasis added.) *Wainwright* v. *Greenfield,* 474 U.S. 284, 106 S. Ct. 634, 639, 88 L. Ed. 2d 623 (1986); see also *State* v. *Zeko,* 177 Conn. 545, 553–54, 418 A.2d 917 (1979).

*Doyle* has not been extended to apply to a defendant's silence before he has been taken into custody and

---

[2] The defendant nominally makes his due process claim under both the state and federal constitutions. "The due process clauses of the United States constitution, § 1, of the fourteenth amendment, and of the Connecticut constitution, article first, § 8, can be treated together because they 'generally have the same meaning and impose similar constitutional limitations.' *Keogh* v. *Bridgeport,* 187 Conn. 53, 60, 444 A.2d 225 (1982); *McKinney* v. *Coventry,* 176 Conn. 613, 616, 410 A.2d 453 (1979)." *Gunther* v. *Dubno,* 195 Conn. 284, 297 n.13, 487 A.2d 1080 (1985). The defendant proffers no argument for enhanced state constitutional protection and, on the facts of this case, we see no reason independently to perform such an analysis. See *State* v. *Thompson,* 197 Conn. 67, 76 n.6, 495 A.2d 1054 (1985).

given *Miranda* warnings; *Jenkins* v. *Anderson,* 447 U.S. 231, 240, 100 S. Ct. 2124, 65 L. Ed. 2d 2486 (1980); or to his silence following his arrest but before receiving such warnings. *Fletcher* v. *Weir,* 455 U.S. 603, 102 S. Ct. 1309, 71 L. Ed. 2d 490 (1982). *Doyle* has also been held inapplicable to cross-examination of a defendant concerning his failure to inform the police, at the time of his statement following his arrest and receipt of *Miranda* warnings, of the inconsistent version of the crime given in his trial testimony. *Anderson* v. *Charles,* 447 U.S. 404, 408, 100 S. Ct. 2180, 65 L. Ed. 2d 222, reh. denied, 448 U.S. 912, 101 S. Ct. 27, 65 L. Ed. 2d 1173 (1980); see *State* v. *Casey,* 201 Conn. 174, 184–86, 513 A.2d 1183 (1986); *State* v. *Talton,* 197 Conn. 280, 295, 497 A.2d 35 (1985).

Two state courts have dealt with the issue facing us today, but have reached different conclusions. The Supreme Judicial Court of Maine held that pre-arrest silence following *Miranda* warnings could be used to impeach a defendant, who had made no statement to the police, concerning "his failure to tell the officers the story he told on the stand." *State* v. *Robinson,* 496 A.2d 1067, 1072 (Me. 1985). The Wisconsin Supreme Court, however, decided that "[r]eceipt of the *Miranda* warning is the important factor in the *Doyle* analysis, not whether the defendant has been arrested," and that, "[t]herefore the *Doyle* rationale protects post-*Miranda* silence whether occurring before or after arrest."[3] *State* v. *Fencl,* 109 Wis. 2d 224, 234, 325 N.W.2d 703 (1982).

---

[3] The Wisconsin Supreme Court also went on to conclude that the use of pre-arrest silence for impeachment, even in the absence of *Miranda* warnings, constituted a violation of the defendant's fifth amendment privilege against self-incrimination. *State* v. *Fencl,* 109 Wis. 2d 224, 233 n.6, 235–38, 325 N.W.2d 703 (1982). We have held to the contrary based upon the statement in *Jenkins* v. *Anderson,* 447 U.S. 231, 238, 100 S. Ct. 2124, 65 L. Ed. 2d 2486 (1980), as follows: "We conclude that the Fifth Amendment is not violated by the use of pre-arrest silence to impeach a criminal defend-

In this case there is no necessity for us to venture into this unsettled area of federal constitutional law and we reject the state's invitation to do so. Even if the admission of the rebuttal testimony concerning the defendant's failure to return to the police in order to correct the statement he previously had given constituted a constitutional error, as the Appellate Court concluded, we agree with the further analysis made by that court holding that its admission was harmless beyond a reasonable doubt. See *State* v. *Shashaty,* supra, 394–95. As the Appellate Court noted, "the state's attorney merely asked the officer as a factual matter whether 'at any time, [he] receive[d] any contact from [the defendant] and information from him that he had either been mistaken or lied in this statement.' After the officer answered no, the state's attorney then asked whether the officer had been 'advised of the existence of any individual by the name of Mark, who allegedly picked [the defendant] up while he was hitchhiking home from [the] party on March 6?' When the officer stated that he had not, the line of questioning was dropped." Id.

The defendant does not claim any further reference at trial to his silence.[4] The credibility of his alibi defense advanced at trial already had been "substantially

ant's credibility." *State* v. *Leecan,* 198 Conn. 517, 521, 504 A.2d 480, cert. denied, 476 U.S. 1184, 106 S. Ct. 2922, 91 L. Ed. 2d 550 (1986).

[4] The state conceded at oral argument that it had offered its rebuttal evidence of the defendant's pre-arrest silence both to impeach the defendant's credibility and, substantively, to demonstrate his consciousness of guilt. In its instructions to the jury, however, the court made no reference to the applicability of such evidence to show the defendant's consciousness of guilt. Further, because the transcript does not record the closing arguments of counsel, we cannot ascertain whether the state argued for such a substantive use of the defendant's silence. The use of the defendant's pre-arrest silence on rebuttal rather than on cross-examination of the defendant did not deprive him of an opportunity to offer an explanation for his silence. He could have offered further testimony, his own or that of others, to explain or refute the state's rebuttal testimony.

damaged," as the Appellate Court observed, by the testimony of four witnesses who had testified, in contradiction of his first alibi contained in his statement to the police, that he had been in the company of those witnesses at the time the crime occurred. Coupled with the devastating effect of the defendant's prior admittedly contrived alibi upon the credibility of his testimony at trial, the evidence of the crime presented by the state must fairly be characterized as overwhelming. The defendant was not a stranger to the victim, as they admittedly had been in each other's presence for several hours at the relatively small party that had preceded the crime. No serious issue of her ability to identify him has been raised. As we have mentioned in discussing the erroneous *Secondino* charge, the victim's testimony concerning the circumstances of the assault was corroborated by the examination of her clothing following her report of the incident to the police. We agree with the Appellate Court that the criteria for finding a *Doyle* error harmless beyond a reasonable doubt as set forth in *Chapman* v. *United States,* supra, 1249–50, were adequately satisfied in this case.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.