STATE OF CONNECTICUT *v.* BRIAN HUDSON
(5781)

BORDEN, O'CONNELL and STOUGHTON, Js.

Argued January 7—decision released May 24, 1988

*Monte P. Radler,* assistant public defender, for the appellant (defendant).

*James A. Killen,* deputy assistant state's attorney, with whom, on the brief, was *Eugene Callahan,* state's attorney, for the appellee (state).

O'CONNELL, J. The defendant appeals from the judgment of conviction of robbery in the first degree in violation of General Statutes § 53a-134 (a) (4), and assault in the second degree in violation of General Statutes § 53a-60 (a) (2). The defendant claims that the trial court erred (1) in denying the defendant's motion to suppress pretrial and in-court identifications, (2) in directing the jury to "observe the courtroom" upon completion of the in-court identification, (3) in giving an adverse inference instruction regarding the defendant's failure to call an alibi witness, and (4) in refusing defense counsel's request to allow the defendant to stand at the jury box during summation. The defendant also claims that the cumulative impact of the claimed errors deprived the defendant of a fair trial. We find no error.

The jury reasonably could have found the following facts. Shortly after 8 p.m. on January 12, 1985, the victim parked her car near an office building in Stamford, intending to visit a friend who was at work within the building. She attempted to enter the building but the door was locked, and her attempts to call to her friend

were of no avail. Upon returning to her car, she noticed a man and woman standing near the only other automobile on the block, approximately fifty feet away. As she was about to enter her car, she felt a strong tug at her pocketbook which was slung over her left shoulder. Turning, she saw that a black woman, one of the two people she had noticed at the nearby automobile, was attempting to seize the pocketbook. A tug-of-war ensued until the defendant, a black male, approached brandishing a pistol and commanded, "Give her the purse or I'll shoot you." The victim began screaming, and after disregarding a second warning from the defendant she was struck on the head with the gun. As the victim brought her hands up to protect her head, she loosened her grip on the purse and also upon a brown paper bag she was carrying. The female assailant, later identified as Sheila Hudson, the defendant's sister, yanked the purse from the victim's arm, and both the defendant and his sister backed away, momentarily stopping to view the contents of the paper bag now lying in the street. The two attackers then turned and ran and, although the victim attempted to pursue them, the defendant and his sister eluded her. One week after the assault, the victim selected the defendant's photograph from a photo array at the Stamford police station. She also made an in-court identification of the defendant as her male attacker. She later identified Sheila Hudson as her female assailant. Sheila Hudson's conviction is the subject of the appeal in *State* v. *Hudson*, 14 Conn. App. 472, 541 A.2d 539 (1988).

I

The defendant first claims the trial court erred in failing to suppress the victim's pretrial and in-court identifications of the defendant as one of her assailants.

"The trial court held an evidentiary hearing regarding the identifications and specifically found that none

of them was the result of an impermissibly suggestive procedure, and that they were reliable. See, e.g., *State v. Vilhotti,* 11 Conn. App. 709, 713–18, 529 A.2d 235 (1987). It would serve no useful purpose to recite those findings here. We have fully reviewed the record, and we conclude that those findings are amply supported by the evidence. *State v. Mitchell,* 204 Conn. 187, 203, 527 A.2d 1168, cert. denied, U.S. , 108 S. Ct. 293, 98 L. Ed. 2d 252 (1987)." *State v. Daniels,* 13 Conn. App. 133, 135, 534 A.2d 1253 (1987).

## II

The defendant's next claim of error concerns the in-court identification of the defendant as one of the victim's assailants. The victim chose the defendant and his sister from a group of six black males and six black females, seated in a row in the courtroom. The identification occurred outside the presence of the jury, and prior to their being sworn. After the jury was brought in and sworn, the court instructed the jurors to "take a few moments and observe everyone in the courtroom." The jury was then excused without comment concerning the identification. The defendant argues that this procedure "impermissibly bolstered" the state's evidence, because the jury was able to view the other subjects of the "lineup" after the victim had identified both the defendant and his sister as her assailants out of the jury's presence. The defendant's argument is meritless. "The manner in which in-court identifications are conducted is not of constitutional magnitude but rests within the sound discretion of the trial court." *State v. Smith,* 200 Conn. 465, 470, 512 A.2d 189 (1986); *State v. Cubano,* 9 Conn. App. 548, 555, 520 A.2d 250 (1987). The defendant had requested that an in-court identification occur outside of the jury's presence, prior to trial. The record indicates that the trial court allowed the jury to observe the people seated

in the courtroom so that the twelve people in the lineup were not required to remain in court throughout the suppression hearing which preceded the trial.

The action of the trial court merely ensured that the jury had the benefit of the most accurate picture of the circumstances of the in-court identification, to prevent either party from exploiting the jury's absence from the procedure. We note further, that the defendant does not raise on appeal the admission into evidence of photographs of the lineup taken by the state's attorney. "The innate weakness in any in-court testimonial identification is grounds for assailing its weight rather than its admissibility." *State* v. *Smith,* supra, 470. The court neither bolstered the state's evidence nor abused its discretion in instructing the jury to "observe everyone in the courtroom."

### III

The defendant next claims that it was error for the trial court to instruct the jury that it could draw an adverse inference from the defendant's failure to call certain alibi witnesses. *Secondino* v. *New Haven Gas Co.,* 147 Conn. 672, 675, 165 A.2d 598 (1960). We disagree.

After consideration of each party's request to charge, the trial court rejected the state's request to give a *Secondino* instruction concerning the defendant's failure to produce two alibi witnesses. The court denied the request on the grounds that the state had not established the availability of the witnesses. In response to the denial, the state requested that the court take judicial notice of the fact that one of the alibi witnesses, Pearl Hudson, the defendant's mother, was present in the courtroom and obviously available to testify. The defendant moved to reopen its case to offer Pearl

Hudson's testimony; the trial court granted the defendant's motion and Pearl Hudson testified.

The defendant next presented the testimony of Vasco Willis, an investigator with the public defender's office. Willis testified that he was unable to locate the second alibi witness, the defendant's brother, Lorenzo Hudson. Willis also related that the defendant's mother told him that Lorenzo was incarcerated, but that he ascertained that Lorenzo Hudson was not incarcerated at the Bridgeport Correctional Center and that he did not have a telephone listing in New Haven. This evidence was then presented to the jury. The court subsequently delivered a "missing witness" charge regarding Lorenzo Hudson.

" 'The failure of a party to produce a witness who is within his power to produce and who would naturally have been produced by him, permits the inference that the evidence of the witness would be unfavorable to the party's cause.' " *State* v. *Ruiz,* 202 Conn. 316, 324, 521 A.2d 1025 (1987), quoting *Ezzo* v. *Geremiah,* 107 Conn. 670, 677, 142 A. 461 (1928). " ' "There are two requirements for the operation of the [*Secondino*] rule: The witness must be available, and he must be a witness whom the party would naturally produce." . . .' " *State* v. *Howard,* 12 Conn. App. 655, 657, 533 A.2d 890 (1987).[1] If the evidence presented is sufficient to support a finding that a missing witness was available to the defendant, the court's charge was properly given. *State* v. *Howard,* supra, 657–58.

The standard which determines a witness' availability to testify is "whether there was sufficient evidence to support a finding by the jury that the missing witness was available to the defendant." *State* v. *Daniels,*

---

[1] The defendant concedes the second requirement of the rule, namely, that Lorenzo Hudson was a witness whom the defendant would naturally have produced to testify.

180 Conn. 101, 110, 429 A.2d 813 (1980). In *Daniels*, the state's attorney questioned the defendant about a potential witness' whereabouts and elicited the response, "She's home, I guess." Id. Our Supreme Court held that "[t]his testimony provided the jury with sufficient evidence to support a finding by it that [the potential witness] was available to the defendant as a witness at the time of trial." Id.

In the present case, the defendant's first alibi witness, Pearl Hudson, testified on cross-examination that Lorenzo Hudson resided in New Haven at the time of trial.[2] While this evidence is by no means conclusive on the question of Lorenzo Hudson's availability, under the standard set in *State* v. *Daniels*, supra, we conclude that the evidence was sufficient to support a finding by the jury that the witness was available.

---

[2] The colloquy was as follows:

"Q: All right. How about Lorenzo, wasn't he around?

"A: No. Lorenzo lives in New Haven.

* * *

"Q: Where is Lorenzo now?

"A: New Haven.

"Q: He lives in New Haven?

"A: Yes.

"Q: How long has he lived in New Haven?

"A: Over a year now.

"Q: At the same address?

"A: No.

"Q: Do you know whether Brian ever visited him in New Haven or not?

"A: Brian went up there one time before he was arrested to try to find employment because he was staying up there with Lorenzo looking for a job.

"Q: Oh, he was living with Lorenzo? In New Haven?

"A: Yes.

"Q: Did you know when that was?

"A: It was back in '84.

"Q: But Lorenzo is still living in New Haven?

"A: Yes

"Q: Do you know when the last time you saw Lorenzo was?

"A: Three weeks ago."

We note that despite the defendant's argument to the contrary, the testimony of the public defender's investigator, that he could not locate Lorenzo Hudson, is of no consequence. The investigator testified that he did nothing more in New Haven than check directory assistance for Lorenzo Hudson's telephone listing. Pearl Hudson testified, however, that Lorenzo did not have a telephone. We conclude such testimony does nothing to bolster the defendant's allegation that Lorenzo was unavailable to testify. Further, such testimony does not negate the evidence elicited by the state's attorney that Lorenzo Hudson resided in New Haven at the time of trial.[3]

The defendant also claims that the *Secondino* instruction shifted the state's burden of proof in violation of the due process clause of the fourteenth amendment to the United States constitution. This claim is without merit.

Both this court and our Supreme Court have held that questions concerning the propriety of a *Secondino* instruction do not rise to the level of a constitutional challenge: "In this appeal the defendant suggests that the *Secondino* charge, 'even if otherwise proper under local rules of evidence,' implicates constitutional rights because 'it violates the presumption of innocence and shifts the burden of proof from the prosecution to the

---

[3] We note further that the trial court stated earlier in the proceeding, before the evidence of Lorenzo Hudson's New Haven residence was elicited, that it allowed a *Secondino* instruction in a similar case because "there was much discussion about that witness' residing in the area. I didn't have any hesitation in that case whatsoever." It appears that upon hearing the testimony elicited by defense counsel with regard to Lorenzo Hudson's whereabouts, the trial court changed its opinion of the propriety of the *Secondino* instruction. In defending its *Secondino* instruction in response to the defendant's motion for mistrial, the trial court stated "[T]here was evidence, if I recall, that [Lorenzo Hudson] lived in New Haven and that he was seen recently in the Stamford area. . . . And he's part of the defendant's family."

defendant.' This court, however, has held to the contrary. See *State* v. *Annunziato,* 169 Conn. 517, 538, 363 A.2d 1011 (1975); see also *State* v. *Peary,* 176 Conn. 170, 182, 405 A.2d 626 (1978), cert. denied, 441 U.S. 966, 99 S. Ct. 2417, 60 L. Ed. 2d 1072 (1979)." *State* v. *Shashaty,* 205 Conn. 39, 43–44, 529 A.2d 1308 (1987), affirming *State* v. *Shashaty,* 8 Conn. App. 387, 513 A.2d 172 (1986).[4] The trial court's *Secondino* instruction was not erroneous.

## IV

The defendant next claims that the trial court erred in refusing his request to allow him to stand before the jury box during his counsel's summation. The defendant's argument is unpersuasive. "The court, in its discretion, may permit in-court experiments and demonstrations if they will aid the factfinder. *State* v. *Leopold,* 110 Conn. 55, 67, 147 A.118 (1929); Tait & LaPlante, Connecticut Evidence § 9.6." *State* v. *Gooch,* 186 Conn. 17, 22, 438 A.2d 867 (1982). In this case, however, the evidence of the defendant's facial features had been presented during the trial, and the purpose of this request was to permit the jury to observe at close range certain facial characteristics of the defendant after the presentation of evidence had concluded. After reviewing the record we conclude that the trial court did not

---

[4] The defendant also claims that the remarks made by the state's attorney concerning the *Secondino* instruction were improper. We need not address this claim, however, in light of our conclusion that the instruction was properly given, and in light of the defendant's failure to present this claim in his preliminary statement of issues filed pursuant to Practice Book § 4013 (a) (1), or in the statement of issues presented in his brief. See Practice Book § 4013; *White Oak Corporation* v. *Department of Consumer Protection,* 12 Conn. App. 251, 257 n.11, 530 A.2d 641 (1987); see also *State* v. *Bell,* 13 Conn. App. 420, 426, 537 A.2d 496 (1988) (having failed to preserve claim of prosecutorial misconduct at trial, the defendant is not entitled to review of his claim under either *State* v. *Evans,* [165 Conn. 61, 70, 327 A.2d 576 (1973)] or the plain error doctrine).

abuse its discretion in disallowing defendant counsel's request to stand the defendant before the jury box during summation.

## V

The defendant's final claim of error is that the cumulative effect of the claimed errors deprived him of a fair trial. Because we find that none of the challenged trial court actions was erroneous, we conclude that the cumulative impact of those actions did not deny the defendant a fair trial. See *State* v. *Harris,* 182 Conn. 220, 230–33, 438 A.2d 38 (1980); *State* v. *Robinson,* 14 Conn. App. 146, 149–51, 539 A.2d 1037 (1988).

There is no error.

In this opinion the other judges concurred.